E. N. McDuff et al. *v.* D. C. Beauchamp, Sup't, etc.

1. Married Women — Separate Property — Mortgages Thereof. — It is well settled in this state that the power of a married woman to mortgage her separate estate_ is limited to securing those debts which she is permitted, under the statute, to incur, and for the separate debts of her husband; but, in this case, only to the extent of the income. Viser v. Scruggs, 49 Miss., 713. A mortgage on the wife's separate property to secure a note made by husband and wife, is valid as to the income, under § 23, Code 1857, p. 336.

2. Conveyance to Husband and Wife — Effect Thereof. — A conveyance to a husband and wife jointly creates an estate of entirety. It does not make them joint tenants or tenants in common, under the statute. Both are seized of the entirety, and have none of the incidents of cotenancy. Neither can alien without the consent of the other, and the survivor takes the whole.

3. Estates of Entirety — How Created, etc. — A conveyance that would create a joint tenancy in others, makes husband and wife tenants of the entirety. Such estates exist in this state as at common law, and were not abolished by art. 18, Code 1857, p. 309. Such estates are not affected by the statutes for the preservation and protection of the separate estates of married women, and the marital rights therein exist as at common law. As they can be alienated in fee by a joint deed of husband and wife, so they can be incumbered in the same way.

4. Suits by Officers — Revival Thereof. — Although there is no statute in this state authorizing a suit brought by an officer to be prosecuted in the name of his successor, yet it has long been the practice in this state to allow it. A change in the incumbent of an office, pending the suit, does not abate the suit and make it necessary to begin *de novo*, if the successors are charged with the same duties.

5. Same — Superintendents of Education. — The duty of collecting school funds devolves by law upon county superintendents. Any suit brought by them is in virtue of their office. The county superintendent is the litigant, though the incumbent may have changed several times before the final derermination of the suit.

Appeal from the Chancery Court of Leake County. Hon. Samuel Young, Chancellor.

R. J. Edmonds, being indebted to the township school fund, in 1859, and having mortgaged his land to secure the debt, and desiring to free his land from this mortgage, induced his sister, E. N. McDuff, and her husband, R. F. McDuff, to assume his debt and mortgage the lands in controversy to secure it. This bill was filed to foreclose this mortgage. The decree was for the sale of the land embraced in the mortgage by a commissioner. The deed to the land mortgaged was made to McDuff and wife jointly by Leflere.

The errors assigned, are :

1. That the note and mortgage whereon said decree was made, were given by a married woman, in 1859, and were void as to her, being such a contract as she was not authorized by law to make, and therefore no decree should have been made against her.

2. Said decree is erroneous, because it directs the sale of the *corpus* of her said estate, whereas said note and mortgage were not for her debt, but for the debt of her husband; the said note not being obligatory on her, but only on her husband, and if said mortgage was valid at all, it was only binding on the income of her said estate.

3. Said decree is erroneous, because said suit was commenced by H. H. Howard, county superintendent, and revived in favor of Beauchamp, his successor in office, against the objection of appellant; and said decree is in favor of Beauchamp, while no law authorizes such revival.

Briefs.

*J. A. P. Campbell*, for appellants, insisted:

1. That the assumpsit by a married woman of the debt of another is not such a contract as she is authorized by law to make. That if it was the debt of her husband, she could do no more than bind the income of her separate property.

2. That if the title was vested in husband and wife, they held by entireties, and it could not be conveyed, except by act of both, and if the wife cannot incumber her estate beyond its income for the debt of her husband, she could not convey her interest as tenant of the entirety. Her interest in the entirety is as much her property as any other she holds, and is protected by the statute as other separate property of married women.

3. That the suit having been brought by Howard, should not have been revived by Beauchamp, his successor in office, as there is no law for such revivor. Portevant v. Pendleton, 23 Miss., 25; Allen v. Mandeville, 26 Miss., 397. A statute giving the right to sue and collect does not give the right to revive a pending suit. Torry v. Robertson, 24 Miss., 192.

*George Hine*, for appellees, contended:

1. That the deed to the land mortgaged was made to McDuff and wife, thereby creating them tenants in entirety, and hence there could be no separate property within the meaning of the statute in the wife, and cited Hemingway v. Scoles, 42 Miss., 15.

2. That although McDuff and wife may have taken the deed under a misapprehension of its legal effects, this could not affect the rights of the mortgagees who were such for value.

*G. E. Harris*, attorney general, for appellee, filed an elaborate brief, relying substantially upon the same points made in the brief of the associate counsel, and in addition insisted, 1. That if the slave, which was in part exchanged for the land mortgaged to the school trustees, was acquired by Mrs. McDuff prior to the passage of the married woman's law of 1839, it vested absolutely in the husband; Sharp v. Maxwell, 30 Miss., 589, and if the cash used was acquired prior to the married woman's law of 1857, it also belonged to the husband.

SIMRALL, J., delivered the opinion of the court:

The foreclosure of the mortgage is resisted upon several grounds. It is averred in the answer that Mrs. McDuff did not make the acknowledgment within the terms of the statute. The certificate of the probate clerk, before whom it was made, recites an almost literal compliance with the law.

It is also set up that the bill single, the evidence of the debt, is not obligatory upon Mrs. McDuff because of her coverture; that the mortgage is invalid as a security; or if available at all, only to the extent of the income of the mortgaged premises.

The brother of Mrs. McDuff was indebted to the trustees of the school fund, by note and mortgage, and having an opportunity to sell his land thus incumbered, he induced his sister and her husband to substitute their obligation and the mortgage in question, so as to relieve his land. The land thus mortgaged by McDuff and wife had been long prior thereto, conveyed to them jointly, as husband and wife. They aver, however, that the consideration paid to their vendor was the separate means of the wife, and that in equity she is the exclusive owner of the property, constituting, under the statutes, a separate estate in her.

It has been held, that the power of a married woman to mortgage her separate property is limited to securing those debts which she is permitted under the statutes to incur; and, secondly, for the debts of the husband, but that only to the extent of the income. Viser v. Scruggs, 49 Miss., 713–714; Dibrell v. Carlisle, 48 Miss., 706; Foxworth v. McGehu, 44 Miss., 432. These authorities further hold that a mortgage on the wife's separate property, to secure a note made by husband and wife (to which note the plea of coverture would be a valid defense at law) is nevertheless a valid security, to the extent of the income of the property, because such note is obligatory on the husband, and such mortgage is good, within the intendment of the last clause of sec. 23, p. 336, Code of 1857. See also Whitworth v. Carter, 43 Miss. Rep., 61. If it were true, then, that the lands embraced in the mortgage were

Mrs. McDuff's separate property, the mortgage would take hold of, and be effective as to its income.

But the estate which vested in McDuff and wife, by the conveyance from Leflére to them, was an estate of entirety. The legal effect of a conveyance to husband and wife, is not to make them joint tenants, or tenants in common; under the statute both are seized of the entirety, and have none of the anities and incidents to covenancy. Both being seized of the entirety, neither could alien without the consent of the other, and the survivor would take the whole. The same deed which would create an estate in joint tenancy in other persons, make husband and wife tenants of the entirety. Coke on Litt., 187, b. 2 Black, 182; 2 Kent Com., 132. In Hemmingway, Adm'r, v. Scales, 42 Miss., 16 and 17, it was held, that this sort of estate existed in this state as at common law. That it was not abolished by art. 18, p. 309, of the Code of 1857, declaring "all conveyances   *   *   to two or more persons, shall be construed to create estates in common, and not in joint tenancy." The main purpose of this statute was to do away with the common law incident of the *jus accrescendi* of joint tenancy, so that the interest of each tenant might descend to the heir, instead of going to the survivor. In that case the surviving wife took the whole estate. Both husband and wife are seized of the entirety. Torry v. Torry, 14 N. Y., 430. And take but one estate. Taul v. Campbell, 7 Yer. Tenn. Rep., 333.

Has Mrs. McDuff such such an estate, as is "separate" within the meaning of the statutes for the protection of the property of married women? In Goelet v. Gori, 31 Barb., 314, the single point considered by the court was, as to the effect of the New York statute on that subject (which is much like ours), on a conveyance to husband and wife; it was ruled that it had no application to such an estate. These statutes were not designed to embrace estates, which the *feme covert* takes and holds jointly with her husband, but those which she takes and holds (to the extent defined) as if she had no husband. The marital rights remain as

they were at the common law, unaffected by the statutes framed for the protection of the separate property. Torry v. Torry, 14 N. Y., 430. Bank v. Gregory, 49 Barb., 162.

One of the incidents of the estate is that it can only be alienated by the joint act of the husband and wife. We think that the mortgage made by them, to the trustee of the common school fund, is valid.

A separate conveyance by the husband would pass no present interest to an alienee. This estate as we have seen, is not affected by the statute which converts the estate of joint tenants into tenancy in common, nor by the statutes for the preservation and protection of the separate property of married women. It has always been the mode in this state, and perhaps now in all the American states, where jurisprudence has been derived from the common law, to transfer by joint deed of husband and wife, the real estate of the wife owned at the time of the marriage, or subsequently acquired, or an estate jointly held by husband and wife. Under our statute the deed conveys the fee simple title. That assurance has become the substitute for the common law modes. It would follow then that as at the common law an alienation of the estate of entirety could be made by husband and wife; it can be done here by a joint deed properly sealed and acknowledged. Since they could convey absolutely the ordinary deed of bargain and sale, they could also mortgage the property which, strictly speaking, is the conveyance of a conditional estate. The reasoning of the court in Sessions v. Bacon, 26 Miss., 273 was, if the husband and wife may make an absolute alienation, it was clear a lesser one by mortgage could be conveyed. Inasmuch as the power to convey by proper deed existed without limitation or restriction, a lesser estate than the absolute fee might be transferred. The statute of 1857, putting a restriction on the power of mortgaging the wife's property, modifies the law as it existed at that time.

But it is argued for Mrs. McDuff that, because her separate prop-

erty paid the price of the land, a trust was raised for her benefit, which in equity made her the owner.

That, however, would be but a secret claim, which could not prevail against the mortgagees, who were such for a valuable consideration. Love v. Taylor, 26 Miss., 574, and cases there cited. The consideration of the mortgage and bill single is, the extinguishment and payment of the note and mortgage of the brother of Mrs. McDuff to the school trustees.

The further defense made in the answer, that the deed was intended to be made from Laflore to Mrs. McDuff alone, is not seriously insisted upon in this court. The proof is, that the conveyance was purposely made to husband and wife, under a mistake of law, that it could not be made to the wife alone. In that view, the conveyance was executed as desired, but the legal effect does not conform to the view of the parties. Clearly, parties accepting from McDuff and wife a mortgage, would not be affected by such defense as this.

It was also insisted that the suit abated by the expiration of Howard's term of office, and that it was error to substitute Beauchamp his successor, as complainant in his stead.

This suit was begun by Howard, county superintendent, and upon his retirement from office was continued in the name of Beauchamp, his successor. It is contended that the expiration of the term of office of Howard wrought an abatement of the suit; and there is no law authorizing its revival and prosecution by his successor. We know of no statute applicable to this state of facts. We believe, however, that the practice has long prevailed in this state, to allow a successor in office to prosecute a suit instituted by his predecessor. For many years, the bonds of officers were payable under the law to the governor; those of executors, administrators and guardians, to the judge of probates. It was never supposed that a change of the incumbents of these offices, abated a pending suit in the technical sense. In Portevant v. Pendleton, Adm'r, 23 Miss. Rep., 40, it was said that " by the common law all

personal actions abated by the death of either party before judgment," and that it is by statutes in England and this country, that the evil was remedied by allowing the bringing in of the representatives of the decedent by *scire facias.* That writ at the common law was confined to the service of a judgment by the representatives, so that they might get its fruits. But is there not a difference between the death of a person, and the dissolution of an office by death, resignation or expiration of a term upon a successor. The office still exists, although the incumbents may be perpetually changing. The auditor of public accounts, the treasurer, secretary of state, exert a portion of the public authority in discharging official duties imposed by law. So of the superintendents of education for the state and the several counties. In the official acts performed by them they have no personal interests. The duty of collecting school funds is imposed upon the county superintendent. Any suit he may bring is in virtue of his office. The county superintendent is the litigant, though the incumbent may have changed several times before the final determination. In State ex relation of Bushnell v. Gates, clerk, 22 Wis., 214, a proceeding instituted against a clerk, was continued against his successor, because it was to be regarded as a proceeding against the officer and not against an individual." Indeed, such a rule is essential to the administration of justice, in view of the frequent changes in office.

The change in the incumbents of office pending the suit, does not abate the suit, and make it necessary to begin *de novo*, if the successors are charged with the same precise duties. Sutter v. City of Madison, 15 Wis., 37. In the case of Lindsey v. Auditor, 3 Bush. (Ky.), 235, the auditor resigned and his successor was qualified. This, say the court, presented no defense in bar or abatement. The induction of the new order should have been suggested, and the suit should have progressed against him. See also 18 B. Monroe, 13; Madox v. Grayham & Knox, 2 Met. Ky., 71; Clark v. McKenzie, 8 Bush. Ky., 531. In such cases, whether

as plaintiff or defendant, the officer represents the public interest.

It was not error therefore to permit Beauchamp, the successor of Howard to prosecute the suit to final decree.

We see no error in the decree of foreclosure, and it is affirmed.